IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Crim. No. DLB-23-0234 |
| **MARTIQUE CABRAL VANDERPOOL** | * | |
| **Defendant.** | * | |

**MEMORANDUM OPINION**

Martique Cabral Vanderpool, a former police officer for the Fairmount Heights Police Department in Prince George's County, was convicted of falsifying a police report in violation of 18 U.S.C. § 1519. Vanderpool has filed a motion for arrest of judgment or, in the alternative, a motion for judgment of acquittal and a new trial. For the reasons stated below, Vanderpool's motion is denied.

**I.      Background**

On July 6, 2023, Vanderpool was charged in an indictment with one count of falsifying a record, in violation of 18 U.S.C. § 1519. A person violates § 1519 if he "knowingly . . . falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1519. The indictment alleged that Vanderpool

> acting in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation . . . knowingly falsified and made false entries in a record and document (a Fairmount Heights Police Department Incident Report), with the intent to impede, obstruct, and influence the investigation and proper administration of that matter.

ECF 1, ¶ 3. Specifically, the indictment alleged that Vanderpool "wrote a false and misleading Incident Report" to hide the fact "that he had sex with a woman in his custody," which, "if

known, could be investigated as a potential federal criminal civil rights violation." *Id.* It alleged that he falsified the report by omitting that "he and another officer . . . took the handcuffed victim to an abandoned police station on September 6, 2019," that "he had sex with Victim 1 on September 6, 2019," that he and the other officer "caused the vehicle that Victim 1 was driving to be towed from the scene of the traffic stop," and that "he procured the release of the vehicle to Victim 1 from the towing company without Victim 1 having to pay the release fee." *Id.* The indictment further alleged that Vanderpool made an affirmative misstatement in the incident report: He "falsely stated that the registered owner picked up the vehicle (thereby falsely implying that the owner had picked up the vehicle from the scene of the traffic stop)." *Id.*

Vanderpool filed a motion to suppress evidence, ECF 13. The Court denied that motion on February 12, 2024 for reasons stated on the record. Trial was scheduled for October 22, 2024.

Ten days before trial, Vanderpool moved to waive his right to a jury trial. ECF 124. The government did not oppose the motion. *Id.* After a hearing on the motion to waive a jury trial, the Court granted the motion. ECF 129.

Before the trial began, the parties agreed on what the government had to prove to find Vanderpool guilty. To prove a violation of 18 U.S.C. § 1519, the government had to prove beyond a reasonable doubt: (1) the defendant falsified or made a false entry in a document; (2) the defendant did so knowingly; and (3) "the defendant intended to impede, obstruct, or influence the investigation or proper administration of [a matter within the jurisdiction of any department of agency of the United States]." *See United States v. Hassler*, 992 F.3d 243, 246–27 (4th Cir. 2021) (quoting *United States v. Powell*, 680 F.3d 350, 356 (4th Cir. 2012), *superseded by regulation on other grounds as stated in United States v. Carbajal*, 717 F. App'x 234, 240 (4th Cir. 2018)).

A three-day bench trial commenced on October 22, 2024. The government offered the testimony of five witnesses. FBI Special Agent Mark Zimmerman testified about the evidence the FBI recovered during the search of Vanderpool's phone, including text messages between Vanderpool and his partner–officer, Philip Dupree, and WhatsApp messages between Vanderpool and his friend and former colleague, Denny Washington. Sergeant Brendan P. Gill testified about the Records Management System ("RMS"), the electronic recordkeeping system that Fairmount Heights police officers use to document traffic incidents and arrests. Officer Doniese Collins testified about the report writing training she provided to Vanderpool when he was a student at the Metro Transit Police Academy. Lyla Zeidan testified about the police training she gave Vanderpool when he was a student at the Northern Virginia Criminal Justice Training Academy. FBI Special Agent Elizabeth Hung testified about the FBI's investigation of Vanderpool and matters that are within the jurisdiction of the FBI.

After the government rested its case, Vanderpool moved for judgment of acquittal under Rule 29. He argued that the government failed to prove that he wrote the incident report, that he intended to impede, obstruct, or influence the investigation of a matter, and that the matter was within the jurisdiction of the FBI. The Court denied the motion for reasons stated on the record. The parties then presented closing argument.

On October 30, 2024, the Court announced its verdict in open court. The Court found Vanderpool guilty of falsifying the incident report. Pursuant to Federal Rule of Criminal Procedure 23(c), the Court stated its findings of fact on the record.

After the verdict, Vanderpool filed a written statement objecting to the government's rebuttal closing argument. ECF 146. The government filed a response to the written objection. ECF 147.

Vanderpool then filed the pending motion for arrest of judgment or, in the alternative, for judgment of acquittal and a new trial. ECF 156. The motion is fully briefed. *Id.*; ECF 157, 163, 164-2. No hearing is necessary. Loc. R. 105.6 & 207.1 (D. Md. 2023).[1]

## II.   Discussion

Vanderpool invokes three potential avenues for relief. First, Vanderpool argues that the Court must arrest judgment pursuant to Federal Rule of Criminal Procedure 34 because the Court does not have jurisdiction over the charged offense. Next, Vanderpool argues that he is entitled to a judgment of acquittal under Rule 29 because the government did not prove beyond a reasonable doubt that he wrote the incident report and that any omissions in the report were material. Finally, Vanderpool argues that the Court should grant a new trial under Rule 33 because the government relied on illegally seized evidence, made prejudicial statements during trial, and abused its prosecutorial discretion by bringing this charge based on consensual sex. None of these avenues affords Vanderpool relief.

### A.   Rule 34

Vanderpool argues the Court should arrest judgment because it does not have jurisdiction over the charged offense. Vanderpool is incorrect.

"Upon the defendant's motion or on its own, the court must arrest judgment if the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a). District courts have jurisdiction over "offenses against the laws of the United States." 18 U.S.C. § 3231. Under § 3231, "'all that is necessary to vest the district court with jurisdiction' is for a valid indictment to charge a defendant with a federal crime." *United States v. Willix*, No. 23-13324, 2024 WL

---

[1] The government filed a consent motion to file a surreply, ECF 164, which is granted. Vanderpool's motion for leave to file excess pages, ECF 155, which the government does not oppose, also is granted.

1231048, at *1 (11th Cir. Mar. 22, 2024) (per curiam) (quoting *United States v. McLellan*, 958 F.3d 1110, 1118 (11th Cir. 2020)); *see also Huguley v. United States*, 1:19CV524, 2021 WL 4521968, at *2 (M.D.N.C. Oct. 4, 2021) ("The indictment in this case alleged Petitioner was in violation of 18 U.S.C. § 1951(a), 18 U.S.C. § 924(c)(1)(A)(III), and 18 U.S.C. § 922(g)(1). Because the indictment alleged offenses against the laws of the United States, the court had jurisdiction over Petitioner and the charged crimes."); *De La Maza v. United States*, 215 F.2d 138, 140 (9th Cir. 1954) ("[A]fter an offense of the laws of the United States was set forth and returned in the indictment, the district court had jurisdiction of . . . the subject matter . . . .").

Here, the indictment charged Vanderpool with a violation 18 U.S.C. § 1519, a federal offense. The Court has jurisdiction over the crime charged in the indictment. There is no basis to arrest judgment. That ends the inquiry under Rule 34.

Vanderpool does not dispute that the indictment charges a violation of § 1519. Instead, Vanderpool argues the Court does not have jurisdiction over the charged offense because the indictment does not allege any potential federal civil rights violation. On Vanderpool's account, the indictment alleges he had sex with the victim while she was in custody and merely having sex with someone in custody is not a federal civil rights violation and thus is not a matter within the jurisdiction of the FBI. If the allegations do not amount to a matter within the jurisdiction of the FBI, Vanderpool argues, the indictment is defective because it does not allege facts that would satisfy the jurisdictional element of a § 1519 violation. As Vanderpool sees it, if there is no potential federal civil rights violation, there is no jurisdictional hook for a federal offense, and this Court does not have jurisdiction. In his view, this defect in the indictment requires the Court to arrest the judgment against him.

Vanderpool misunderstands the scope of Rule 34. The rule concerns a district court's subject matter jurisdiction. Vanderpool does not challenge the Court's subject matter jurisdiction over the offense. Vanderpool challenges the sufficiency of the allegations in the indictment. He claims the indictment is defective because it does not allege the jurisdictional element of a § 1519 offense. Even if the indictment were defective, "defects in an indictment do not deprive the court of subject-matter jurisdiction." *United States v. Muresanu*, 951 F.3d 833, 839 (7th Cir. 2020); *see United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case."). And a challenge to the indictment on the ground that it fails to state an offense must be filed before trial. *See* Fed. R. Crim. P. 12(b)(3)(v). The Court rejects Vanderpool's post-trial effort to dismiss the indictment for failure to state a claim under the guise of a Rule 34 motion.

The District Court for the District of Columbia recently rejected this same tactic. *See United States v. Sutton*, No. 21-0598 (PLF), 2024 WL 278070 (D.D.C. Jan. 25, 2024). There, the district court denied a nearly identical motion to arrest judgment after former police officers were convicted of obstruction of justice under 18 U.S.C. § 1512. *Id.* at *4. The defendants argued that "the indictment d[id] not allege they or any other officer 'used force against [the victim] which could constitute a federal civil rights investigation.'" *Id.* Thus, they claimed, the "allegations in the indictment [were] insufficient to establish the 'possible commission of a federal offense' element of obstruction of justice"—the jurisdictional element of the offense—so the court lacked jurisdiction over the case. *Id.* The court disagreed. *Id.* As it explained, "even if the indictment were defective because it failed to state an offense, such a defect would not deprive the Court of jurisdiction." *Id.*

So too here. The indictment charged a federal offense. The Court has jurisdiction over it. Even if the indictment were defective for the reasons Vanderpool identifies, it would not deprive the Court of jurisdiction over the offense.

The Rule 34 motion to arrest judgment is denied.

**B. Rule 29**

Under Rule 29, after a finder of fact returns a guilty verdict, "'the court may set aside the verdict and enter an acquittal' if the court concludes that the evidence presented at trial is insufficient to sustain a conviction." *United States v. Freitekh*, 114 F.4th 292, 308 (4th Cir. 2024) (quoting Fed. R. Crim. P. 29(c)(2)). "A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995)). Accordingly, "[r]eversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *Freitekh*, 114 F.4th at 308 (quoting *Beidler*, 110 F.3d at 1067).

On a Rule 29 motion, a court may not "weigh the evidence or review the credibility of the witnesses." *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). Instead, the court determines whether, "viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008) (quoting *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982)). In determining whether there is substantial evidence, a court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *Tresvant*, 677 F.2d at 1021.

While Rule 29 refers to jury verdicts, courts apply the same standard to bench trials. *See, e.g.*, *United States v. Salman*, 378 F.3d 1266, 1267 n.3 (11th Cir. 2004); *United States v. Doe*, 136 F.3d 631, 636 (9th Cir. 1998) ("The same [Rule 29] test applies to both jury and bench trials."); *United States v. Perez*, No. 3:23CR19 (RCY), 2023 WL 7027501, at *1 (E.D. Va. Oct. 25, 2023) ("While Rule 29 specifically refers to the jury trial context, it applies with equal force to bench trials.").

Vanderpool argues the Court should set aside the guilty verdict because the evidence was insufficient to sustain a finding of guilt. Specifically, Vanderpool claims there was insufficient evidence to prove he wrote the incident report and insufficient evidence that the omissions in the report were material. Vanderpool insists that, without sufficient proof that he wrote the report and that it contained material omissions, the guilty verdict must be set aside. Vanderpool is incorrect.

Viewing the trial evidence in the light most favorable to the government, the Court finds that a rational trier of fact could have found Vanderpool wrote the report. The government introduced evidence that Vanderpool's unique user account accessed the RMS system and created the report around 3:00 a.m., hours after the incident, when no other officer was working. The report was written in the first person with Vanderpool as the narrator. The report described Vanderpool's and Dupree's interactions with the victim hours earlier. Ten days after the report was written, Vanderpool used his personal cell phone to text a picture of the report as it appeared in the RMS system to Dupree, the officer who was with Vanderpool when they stopped the victim's car, arrested her, and took her to the police station where Vanderpool had sex with her. When Vanderpool texted Dupree the picture of the report, Vanderpool also texted: "[W]hy TF is sheriff's [sic] at my house." Gov't Ex. 11, at 7. One month after the incident, Vanderpool texted

another picture of the report from his personal cell phone to Dupree. Along with the picture, Vanderpool texted: "The report for that chick. The traffic stop and detention only lasted an hour and she was sent on her way." Gov't Ex. 12, at 1. This evidence, viewed in the light most favorable to the government, could cause a rational finder of fact to find that Vanderpool wrote the report.

A rational trier of fact also could find that the omissions in the report were material. A person may falsify a report or document either by making an affirmative misstatement in the document or omitting material information from the document. *See United States v. Underwood*, 95 F.4th 877, 889 (4th Cir. 2024) (affirming conviction under 18 U.S.C. § 1519 based on material omissions in report); *United States v. Moyer*, 674 F.3d 192, 207–08 (3d Cir. 2012) (holding a reasonable juror could find the defendant officer knowingly falsified documents when he omitted information in his official police report); *United States v. Lanham*, 617 F.3d 873, 887 (6th Cir. 2010) (finding a reasonable fact-finder could conclude that the defendant officer falsified his incident report based on his material omissions in the report). An omission is material if it evidences "a deliberate attempt to conceal improper police conduct." *Underwood*, 95 F.4th at 889 (holding evidence was sufficient for jury to find omissions from police report material when defendant officer omitted the fact that he seized a cell phone from private citizen during a search, did not tag or log in the seized cellphone, and lied about it in subsequent FBI interview).

The government introduced evidence that Vanderpool stopped the victim's car, arrested her, caused her car to be towed, transported her in handcuffs to the police station, had sex with her at the police station, and secured the release of her vehicle to her without her having to pay a towing fee. The incident report included none of this information.

A rational trier of fact could conclude that these omissions were material. Doniese Collins testified that she teaches her students—and taught Vanderpool—that when an officer arrests someone, transports them to another location, and tows their vehicle, the officer must include those facts in their incident report. Collins testified that there was "no question" that an officer would need to include that information in any police report. ECF 152, at 47:3–4 (Oct. 23, 2024 Tr.). Lyla Zeidan testified that in her police officer trainings, which Vanderpool attended, she teaches officers "in[] great detail about the importance of writing documentation fully and accurately," including "the importance of not leaving things out." *Id.* at 62:11–63:8. This testimony could lead a rational trier of fact to conclude that Vanderpool knew it was important to document in the incident report that he handcuffed and arrested the person whose car he stopped for speeding, that he caused her car to be towed, that he transported her from the scene to the police station, and that he secured the release of the car to her. The testimony also could lead a rational trier of fact to conclude that Vanderpool intentionally omitted those facts from the report because he was deliberately attempting to conceal improper police conduct: that he had sex with a person at the police station while she was in his custody. Further evidence of the omissions' materiality is the text message that Vanderpool sent Dupree when he sent him a picture of the incident report: "The traffic stop and detention only lasted an hour and she was sent on her way." *See* Gov't Ex. 12, at 1. This evidence supports a finding that Vanderpool deliberately omitted that he arrested, handcuffed, and transported the victim to the police station to hide the fact that he had sex with her there and to mislead a reader of the report into believing that his interaction with her "only lasted an hour" and that he "sent her on her way" after the traffic stop concluded. Based on this evidence, a rational trier of fact could find that the omissions were material.

10

Vanderpool does not address the fact that the government also introduced evidence that he made an affirmative material misstatement in the incident report. The incident report stated the victim's car was released to its registered owner. The government presented evidence that the car was released to the victim and that she was not the registered owner. Based on this evidence, a rational trier of fact could find that Vanderpool affirmatively mispresented in the incident report that he released the vehicle to the registered owner.

The Rule 29 motion is denied.

### C. Rule 33

Vanderpool argues, in the alternative, that the Court should grant him a new trial under Rule 33. Rule 33 allows a district court to grant a new trial upon the motion of a defendant "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 motions may be based on either newly discovered evidence or "other grounds." Fed. R. Crim. P. 33(b). The court may grant a new trial "[w]hen the evidence weighs so heavily against a verdict that it would be unjust to enter judgment." *United States v. Rafiekian*, 68 F.4th 177, 186 (4th Cir. 2023) (alteration in original) (quoting *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985)). Rule 33 motions "are highly disfavored motions that a court should grant only 'sparingly.'" *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (quoting *United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017)).

Vanderpool seeks a new trial on three grounds: (1) the government introduced into evidence illegally obtained evidence; (2) the government made prejudicial comments during the trial; and (3) the government abused its prosecutorial discretion by charging Vanderpool with an offense based on consensual sex.

1. **Illegally Obtained Evidence**

Vanderpool claims that his right to a fair trial was violated because the seizure and search of his cell phone was illegal and the WhatsApp text messages between him and Washington found during the search of his phone should not have been admitted into evidence. The legality of the search of his cell phone was resolved before trial. Vanderpool filed a motion to suppress evidence, including evidence seized from his cell phone, and the Court denied it. Any arguments in support of suppression of evidence that Vanderpool raised previously have been resolved, and the Court will not revisit them. Any arguments for suppression that Vanderpool did not raise before trial have been waived. Vanderpool also claims the government violated chain of custody rules when it seized his cell phone. He did not raise this issue before trial, and he cannot raise it now. Vanderpool is not entitled to a new trial on these grounds.

2. **Counsel's Statements During Trial**

Vanderpool also claims that the Court should grant a new trial because government counsel made prejudicial statements during trial. He cites *Darden v. Wainwright*, which recognized that a defendant may be entitled to a new trial if "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Nothing government counsel said during trial comes close to meeting that standard.

Vanderpool objects to comments counsel made during a sidebar while Agent Hung was on the witness stand. During cross-examination of Agent Hung, Vanderpool attempted to ask her if she recalled "a prior exonerated suspension" of Vanderpool in 2018. ECF 152, at 145:17–24 (Oct. 23, 2024 Tr.). The government asked for a brief sidebar and raised its concern that Vanderpool was trying to elicit testimony about a topic the Court excluded before trial at

12

Vanderpool's request: his alleged participation in an unrelated towing scheme. Government counsel tried to explain the question's connection to the unrelated towing scheme, and the Court replied, "I don't need to hear it, I don't need to hear it." *Id.* at 147:4–5. Vanderpool claims that the government tried to prejudice the finder of fact by raising the previously excluded towing scheme during the sidebar. That is a patently unfair characterization. The government tried to prevent Vanderpool from inadvertently introducing evidence that *Vanderpool himself had moved to exclude*. *See* ECF 98, at 11 (Vanderpool's motion in limine to prevent the introduction of evidence related to "an unfounded towing scheme"). Rather than prejudice the finder of fact, the government tried to *prevent* prejudice to Vanderpool. Government counsel's comments certainly did not deprive Vanderpool of his right to a fair trial.

Next, Vanderpool objects to comments counsel made during rebuttal. These comments also were in response to evidence that Vanderpool introduced at trial. During his cross-examination of Agent Hung, Vanderpool introduced into evidence an incident report from the traffic stop of another person, Travis Nnamani, which occurred a few months after the stop of the victim in this case. The report was created by Vanderpool's unique RMS user account, but it was written in the first person from the perspective of another officer, Earl Ivey. According to Vanderpool, the Nnamani incident report showed that other officers could access his unique user account to write reports, and if Ivey used Vanderpool's user account to write the report for the Nnamani stop, another officer—perhaps Dupree—could have used Vanderpool's user account to write the report for the stop in this case. Vanderpool cited Agent Hung's testimony and the Nnamani report when he made this point during his closing argument.

In its rebuttal, the government argued that the evidence Vanderpool introduced showed he had falsified the Nnamani report too. In counsel's words: "It looks like Defendant Vanderpool

13

put in his own 404(b) evidence against himself, Judge." ECF 153, at 26:12–14 (Oct. 23, 2024 Tr.). According to the government, it took "gumption" to introduce another false incident report into evidence. *Id.* at 26:23–24.

Now, incredulously, Vanderpool argues that the government's statements are grounds for a new trial. They are not. The government did nothing wrong. It did not admit, or even try to admit, the Nnamani report under Federal Rule of Evidence 404(b). The government responded to evidence that Vanderpool introduced at trial and arguments that Vanderpool made during closing. In its rebuttal, counsel characterized the evidence that Vanderpool introduced as self-inflicted Rule 404(b) evidence. This characterization was appropriate in light of the evidence. Just as Vanderpool could introduce the Nnamani report because he believed it showed he did not author the report for the incident in this case, the government could characterize the evidence as a prior act under Rule 404(b) because it believed the evidence showed Vanderpool did author the report. The government's characterization of Vanderpool's evidence during rebuttal and its position that it took "gumption" to introduce evidence that the government believed was incriminating were entirely appropriate.

None of the government's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Donnelly*, 416 U.S. at 643. The government's comments were completely appropriate. They are not grounds for a new trial.

### 3. Prosecutorial Discretion

Finally, Vanderpool argues that the government abused its prosecutorial discretion by charging him with a crime based on consensual sex. On Vanderpool's account, there was no potential civil rights violation (and, therefore, no matter within the jurisdiction of the FBI) because he and the victim engaged in consensual sex and having consensual sex with someone in

14

custody is not a federal civil rights crime. Vanderpool has not established an abuse of prosecutorial discretion.

"In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *accord United States v. Batchelder*, 442 U.S. 114, 124 (1979). "[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)); *see also United States v. Meeks*, 357 F. App'x 550, 553 (4th Cir. 2009) (rejecting claim that prosecutor abused her discretion by using defendant's prior convictions to increase the applicable statutory mandatory minimum sentence).

Here, a grand jury found probable cause to return an indictment against Vanderpool that charged him with a violation of 18 U.S.C. § 1519. To prove that charge, the government did not have to establish that Vanderpool committed a civil rights violation. Instead, the government had to prove, among other things, that Vanderpool intended to impede the investigation of matter within the jurisdiction of a federal agency. Vanderpool insists that having consensual sex with someone in custody could not be a potential civil rights crime. Agent Hung testified otherwise. According to Agent Hung, she would open an investigation if she "learned of an allegation that a police officer arrested somebody, took them to a police station, and had sex with them." ECF 152, at 94:1–5 (Oct. 23, 2024 Tr.). Agent Hung also testified that the FBI did open a civil rights investigation into Vanderpool after it learned about the allegations. Even though, as Vanderpool argues, Agent Hung "only began working on this matter in 2024, approximately 4.5 years

following the incident in this case and following the issuance of the indictment," ECF 156, at 32, she is an FBI agent with five years of experience on the FBI's public corruption and civil rights squad, and she knew about the scope of the FBI's jurisdiction. Moreover, the government introduced evidence that the sex in custody was not consensual. The victim was a teenager, slight in build, and in a state of panic and mental distress when Vanderpool and Dupree stopped her car. Dupree forced her to the ground so that he could handcuff her. She told the officers she needed to get to her injured son and needed her car. Vanderpool had her car towed, and he and Dupree drove her to the police station in handcuffs, late at night, when no one else was there. When they arrived, Vanderpool and she had sex. A rational trier of fact could find that the sex was not consensual.

Vanderpool's conduct could have been investigated by the FBI as a potential federal civil rights offense. The government had probable cause to charge him with a violation of § 1519. Vanderpool has not established an abuse of prosecutorial discretion.

The Rule 33 motion is denied.

### III.  Conclusion

Vanderpool's motion for arrest of judgment or, in the alternative, motion for judgment of acquittal or a new trial is denied. The government's consent motion to file a surreply is granted. Vanderpool's motion for leave to file excess pages also is granted.

A separate order follows.

Date: February 5, 2025

Deborah L. Boardman
United States District Judge